Justice Jim Rice delivered the Opinion of the Court.
¶ 1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.
¶ 2 Roger and Carrie Peters (Peters) appeal the order of the Water Court that adopted the Water Master's Report dismissing Peters' claim to 120 miner's inches from Medicine Lodge Creek in the Red Rock River Basin (41A).
¶ 3 This case involves two competing irrigation claims, Peters' Claim 41A 95026-00 and Claim 41A 117659-00, held by William and Helen Wellborn (Wellborn).[1] In 1895, the Beaverhead County District Court decreed rights totaling 270 miner's inches from Medicine Lodge Creek, conveyed through the Nesbitt Ranch Ditch, with an August 1, 1886, priority date, split among three appropriators, including James Nesbitt, who was granted 120 miner's inches (3 cfs) (Nesbitt Right). The Nesbitt Property, consisting of nearly 160 acres, was located in Sections 7 and 18 of Township 10 South, Range 11 West, Beaverhead County. Nesbitt sold the property in 1892, and it was eventually sold to C.L. Livestock Company (C.L. Livestock) in 1920.
¶ 4 In 1925, the District Court issued another decree for Medicine Lodge Creek. This decree listed C.L. Livestock as owner of the former Nesbitt Property in Sections 7 and 18, as well as a larger parcel of land in Sections 4, 5, 9, and 10, and granted C.L. Livestock three rights totaling 475 miner's inches, including a right for 120 miner's inches, with a priority date of August 1, 1886, conveyed by the Nesbitt Ranch Ditch.[2] The 1925 decree established that the rights conveyed by the Nesbitt Ditch were historically used on C.L. Livestock's lands in Sections 7 and 18, as well as the lands owned by a Mary Craver (Craver) in Sections 13 and 24 of Township 10 South, Range 12 West. Peters and Wellborn are successors to the lands owned by C.L. Livestock, and both claim a 120 miner's inches right based upon the Nesbitt Right. Because the combined flow rates of their claims exceeded the decreed flow rate, both claims appeared in the Preliminary Decree for Basin 41A with an issue remark denoting a "decree exceeded" status.[3]
¶ 5 The Water Master held a hearing on the Peters-Wellborn "decree exceeded" issue on November 28, 2016. The parties offered several chain-of-title documents as evidence. Wellborn also called three witnesses, but Peters called none, relying on the "prima facie status of claim 41A 95026-00." The Master found that Wellborn was the successor to the Nesbitt Right, and that, while both parties were successors in interest to land owned by C.L. Livestock, "the Medicine Lodge Right is appurtenant" to the land now owned by Wellborn. Moreover, the Master found the water right as conveyed by the Nesbitt Ranch Ditch was historically and continuously put to use on the Wellborn land, and there was no evidence suggesting that the Medicine Lodge Right was severed from the land. The Master determined "the Right remained appurtenant to the land and was conveyed to the Wellborns when they purchased the property." The Master also noted that, other than chain-of-title evidence, Peters did not offer any evidence relating to their historical use of water claimed under 41A 95026-00. Thus, the Master concluded that Wellborn was entitled to all 120 miner's inches, and recommended dismissal of Peters' claim.[4]
¶ 6 Peters filed objections to the Water Master's Report,[5] raising new assertions regarding Wellborn's historical use and the number of acres Wellborn irrigated with the Nesbitt Right. Peters requested the Water Court take judicial notice of another claim, Claim 41A 118190-00, asserting that both Peters and Wellborn are successors to the Nesbitt Right and that the 120 miner's inches flow rate should be apportioned between both parties based on acres irrigated. The Water Court denied Peters' request, reasoning that Peters sought to use the claim "as evidence supporting arguments they first raised in their objection to the Master's Report." The court thus reasoned the assertions were not timely and, further, Peters' new arguments were "not relevant to the decree exceeded issue." The court determined that the Master's recommendations were supported by substantial evidence. Tracing the chain of title, the court found that Peters' and Wellborn's land had a common predecessor after the Nesbitt land was sold and split, who "acquired the Nesbitt property and appurtenant water right in 1920." This land was again sold and split in 1950, with the Nesbitt Right remaining appurtenant to that land. Wellborns became the successor to this right when they purchased the land. As such, the court concluded that "Wellborn acquired the entire Nesbitt [R]ight when [they] purchased the property in 1973," and thus, "Wellborn claim 41A 117659-00 is the successor to the Nesbitt [R]ight."
¶ 7 Peters appeal. In water cases, we employ two standards of review: "the standard the water judge applies to the Water Master's report and the standard we apply to the Water Court's opinion." Marks v. 71 Ranch, LP , 2014 MT 250, ¶ 12, 376 Mont. 340, 334 P.3d 373 (citation omitted). "[T]he Water Court reviews the Water Master's findings of fact for clear error and the Water Master's conclusions of law for correctness." Marks , ¶ 12 (citations omitted). "We apply the same standards of review to the Water Court as we do to an appeal from a district court. Whether the standard of review was applied correctly is a question of law." Marks , ¶ 13 (citation omitted). Thus, we review a Water Court's decision "under a de novo standard to determine whether it correctly applied the clear error standard of review to the Water Master's findings of fact, and whether its conclusions of law are correct." Marks , ¶ 13 (citation omitted).
¶ 8 On appeal, Peters raise three issues: whether the Water Court erred by adopting the Water Master's finding that Wellborn's right as conveyed by the Nesbitt Ditch had continuously been put to use on the Wellborn property; whether the Water Court erred by ruling that any alleged nonuse by Wellborn was not relevant to the validation of Peters' claim to a portion of the right; and third, whether the Water Court erred by denying Peters' request for judicial notice to support their argument that the Wellborn property is incapable of supporting 120 miner's inches, as untimely and irrelevant. We consider the primary issue on appeal to be whether the Water Master's findings that Wellborn was entitled to all 120 miner's inches from the Nesbitt Right were clearly erroneous, and whether the Water Court erred in adopting those findings.
¶ 9 The question presented and to be resolved by the Water Court was the conflict between the competing claims of Peters and Wellborn to the Nesbitt Right. Key to the resolution of that issue was a determination of which party's land the Nesbitt Right was appurtenant, requiring assessment of the chain of title from the original Nesbitt Ranch property, and a determination of whether the water right had been severed from the original place of use. Here, the Water Master considered chain-of-title documents and the district court decrees, tracing the Nesbitt Right from the 1895 decree, which allotted 270 miner's inches from Medicine Lodge Creek through the Nesbitt Ranch Ditch to Wilson Wadams (30 miner's inches), James Nesbitt (120 miner's inches), and Frank Andrews (120 miner's inches) with a priority date of August 1, 1886. The Master found that, "based on the information provided in the Decree and patent information, it is apparent that the Nesbitt Ranch Ditch was historically used to provide water for the irrigation of the lands owned by the appropriators in Sections 7 and 18...." As noted above, the original Nesbitt property was located in Sections 7 and 18.
¶ 10 Water rights on Medicine Lodge Creek were again decreed by the District Court in 1925. At that time, C.L. Livestock owned the Nesbitt property in Sections 7 and 18 and a larger parcel of land in Sections 4, 5, 9, and 10. Craver owned Sections 13 and 24. The decree stated that the Nesbitt Ranch Ditch and the water rights conveyed by the ditch were historically used on C.L. Livestock's lands in Sections 7 and 18 and Craver's lands in Sections 13 and 24. Peters and Wellborn are successors to the land owned by C.L. Livestock. Their water claims, 41A 95026-00 and 41A 117659-00, respectively, include the following lands formerly owned by C.L. Livestock:
SENW of Section 5- (Peters claim 41A 95026-00)
SW of Section 4- (Peters claim 41A 95026-00)
N2N2, S2NE and NESE of Section 9- (Peters claim 41A 95026-00)
SEWS of Section 7- (Wellborn claim 41A 117659-00)
E2NW of Section 18- (Wellborn claim 41A 117659-00)
¶ 11 Notably, Sections 7 and 18 are owned by Wellborn, and the Master found that Wellborn owned the lands formerly owned by C.L. Livestock that are capable of irrigation from the Nesbitt Ranch Ditch. No evidence was introduced showing any severance of the Medicine Lodge Creek right from the land it was originally appurtenant to, or a reservation of the right in the chain of title for either Peters' or Wellborn's property. Additionally, Helen Wellborn testified that the Nesbitt Ditch terminates on Wellborn property, and that no other water users take water from the ditch. Helen's daughter, Virginia Hill, likewise testified that the Nesbitt Ranch Ditch both begins and ends on the Wellborn property, and that all the water from the ditch is consumed on the Wellborn property. In contrast, Peters did not demonstrate historical use of the Nesbitt Ranch Ditch to serve their property, or that they had ever placed a call for this water. As the Water Master stated, "Peters elected to rely almost entirely on the prima facie status of claim 41A 95026-00." Peters did not demonstrate appurtenance of the Medicine Lodge Right to their land because there was no evidence to support historical use in Sections 4, 5, and 9, which they own; rather, the only evidence of historical use was for Sections 7 and 18, which belong to Wellborn.
¶ 12 Our review of the record convinces us that substantial evidence supports the Water Master's findings and does not leave us with a definite and firm conviction that a mistake was committed. The Water Court did not err by adopting the Water Master's recommendation that Wellborn's claim to the 120 miner's inches, as the successor to the Nesbitt Right, was proven. The other issues raised on appeal by Peters, challenging evidentiary rulings by the Water Court denying Peters' offers of evidence, are not error, because the proffered evidence was untimely submitted and did not serve to prove Peters' claim, and therefore was not relevant to the dispute before the Water Court regarding which competing claim was the successor to the Nesbitt right.
¶ 13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.
¶ 14 Affirmed.
We concur:
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.

William Wellborn is now deceased.

C.L. Livestock's other decreed rights were conveyed by other ditches.

Hildreth Livestock Co. filed objections to the claims of both Peters and Wellborn, which were incorporated into the Water Master's recommendations and adopted by the Water Court. Denhan Ranches, Inc., appeared by stipulation on Claim 41A 95026-00. These parties raise no issues in this appeal.

The Master rejected a theory offered by Peters, as unsupported by evidence, that at a point prior to 1973, a change of diversion point had occurred, the claimed water was used on Peters' property, and the Nesbitt Right had been severed from the land owned by Wellborns.

Neither party had filed objections to the other's claim, and thus the legal question was which party's claim had succeeded to the Nesbitt Right.